UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| EMMANUEL CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15-4127 |
| | ) | |
| SHARLENE CARAWAY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### **SUMMARY JUDGMENT OPINION**

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently civilly committed at Rushville Treatment and Detention Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging unconstitutional conditions of confinement. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 54). The motion is granted.

### **PRELIMINARY MATTERS**

### **Plaintiff's Motion to Compel (Doc. 58)**

Plaintiff's motion appears to request a court order directing Defendants to provide Plaintiff with a copy of his deposition. The Court previously advised Plaintiff that he is not entitled to a free

copy of his deposition.  See (Doc. 22 at 9, ¶ 21).  At any rate, Plaintiff filed this motion after Defendants Scott, Hankins, Biermann, Heller, Lay, Orrill, and Pennock filed their motion for summary judgment.  Plaintiff's deposition transcript was attached to that motion, and Plaintiff should now have a copy.

To the extent that Plaintiff is alleging the Defendants have failed to provide him a copy of the transcript for his review, Plaintiff waived his signature at the conclusion of the deposition.  Pl.'s Dep. 110:5-10.  Therefore, Plaintiff's motion is denied.

**Defendants' Motion for Sanctions (Doc. 59)**

Defendants Caraway, Reid, and Simpson filed a Motion for Sanctions (Doc. 59) seeking dismissal of Plaintiff's claims for failure to comply with the Court's discovery orders.  Plaintiff has not responded to the motion or requested additional time to do so.

Defendants sent interrogatories and requests to produce documents to Plaintiff on February 22, 2016.  (Doc. 33-1).  Plaintiff attempted to send responses to these discovery requests to the Court in violation of the Court's Scheduling Order and local rule.  See (Doc. 22 at 8, ¶ 18) ("Discovery requests and responses are not filed with the court.  Plaintiff must mail his discovery requests

directly to Defendants' counsel and not file the requests with the Court or the Clerk."); CDIL L.R. 26.3(A) (stating same). The clerk entered a remark on the docket indicating that these responses would not be filed with the Court. See Remark entered May 2, 2016.

The Court denied Defendants' first motion to compel responses to these discovery requests given that Plaintiff had attempted to send the responses to the Court. See (Doc. 35 at 3, ¶ 5). The Court granted Defendants leave to renew their motion to compel if the responses were not received within 30 days of that Order. Id.

Defendants' renewed their motion to compel on August 19, 2016. (Doc. 39). The Court granted the motion and directed Plaintiff to send his discovery responses to the Defendants within 30 days. See Text Order entered September 22, 2016. Plaintiff again failed to send his responses, and Defendants filed a motion for sanctions.

In their Motion for Sanctions, Defendants sought dismissal of Plaintiff's claims for failure to comply with the Court's discovery orders. (Doc. 48). The Court granted the motion, but denied the request for dismissal. Instead, the Court stayed the discovery

deadlines pursuant to Rule 37(b)(2)(A)(iv) of the Federal Rules of Civil Procedure until Plaintiff complied with the Court's previous orders.  See (Doc. 57 at 3).  Plaintiff was directed to tender his discovery responses within 30 days.  Id.  The Court specifically warned Plaintiff that if he "fails to comply with this Order, the Court will construe his failure to do so as willful," and that the Court would consider dismissal of his claims as a sanction if requested in a properly raised motion.  Id.

Plaintiff does not dispute Defendants' assertions that he has failed to tender the relevant discovery responses.  The Court previously admonished Plaintiff that it would construe his failure to comply as willful, and the Court has given Plaintiff several opportunities over more than one year to send his discovery responses.

Given Plaintiff's willful failure to comply with the Court's discovery orders, the Court finds that dismissal is an appropriate sanction.  See Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016) (Before imposing dismissal as a sanction for discovery violations, the Court must "find that the responsible party acted or failed to act with a degree of culpability that exceeds simple

inadvertence or mistake…."); McInnis v. Duncan, 697 F.3d 661, 665 (7th Cir. 2012) ("[E]ven those who are pro se must follow court rules and directives."); see also De Falco v. Oak Lawn Pub. Library, 25 F. App'x 455, 457–58 (7th Cir. 2001) ("[P]ro se litigants do not enjoy unbridled license to disregard clearly communicated court orders and are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines."). Accordingly, Defendants' Motion for Sanctions is granted. Plaintiff's claims against Defendants Caraway, Reid, and Simpson will be dismissed with prejudice.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be

more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS[1]

Plaintiff is civilly committed at Rushville Treatment and Detention Facility ("Rushville" or "TDF"). Defendants were all employed at the facility in the following capacities: Defendant Scott was the Program Director; Defendant Hankins was the Public Service Administrator; and, Defendants Biermann, Heller, Lay, Orrill, and Pennock were Security Therapy Aides ("STA").

On February 3, 2014, Plaintiff and Defendant Orrill disagreed about whether Plaintiff's headwear complied with TDF rules. The incident, witnessed by Defendant Heller, resulted in Plaintiff's placement on temporary special management status ("temp special"). TDF policy permits placement on temp special status

---

[1] Plaintiff did not respond to Defendants' Motion for Summary Judgment despite receiving notice of the consequences for failure to do so. See (Doc. 56). Therefore, the Court will consider the Defendants' assertions of fact as undisputed for purposes of ruling on the motion. See Fed. R. Civ. P. 56(e)(2).

when a resident "presents an immediate threat to the safety and security of the facility...." (Doc. 55-1 at 33). If, in the opinion of security staff, the resident "can be more effectively managed by placement in a Special Management Status," the resident is moved to a pre-designated area. Id. at 33-34.

Defendants Pennock and Lay escorted Plaintiff to a room in Rushville's special management unit, pending an investigation. According to Plaintiff, the room had "concrete floors, walls, ceiling, and an iron bunk," and the room was otherwise empty. Pl.'s Dep. 23:23-24:1.

Defendants provided an affidavit from Rushville's Chief Engineer, stating that the room's temperature was set at 72 degrees during the six (6) hours Plaintiff was initially confined in the room. (Doc. 55-2 at 21-22). Plaintiff testified that he was wearing sweatpants and a t-shirt, and that he did not ask any of the Defendants for additional clothing, a blanket, or for the heat to be adjusted in the room. Pl.'s Dep. 26:1-27:4. Records indicate that Plaintiff also refused food during this time. (Doc. 55-1 at 42).

At approximately 7 p.m., Plaintiff fell and was taken to the hospital. Medical records disclose that Plaintiff was diagnosed with

physical exhaustion, mild dehydration, and relative hypoglycemia, and that he did not suffer any serious injury (broken bones, etc.). The medical notes indicate that Plaintiff reported he had not eaten for more than a day.  (Doc. 55-2 at 12).  Plaintiff also testified that hospital physicians opined that he was overmedicated for his thyroid condition.  Pl.'s Dep. 33:10-13.

The Behavioral Committee found Plaintiff guilty of the disciplinary infractions arising from the February 3, 2014 incident two days later.  Plaintiff was placed on closed management status as a result.  Pl.'s Dep. 81:5-9.

## ANALYSIS

As a civil detainee, Plaintiff's claim arises under the Fourteenth Amendment's due process clause, not the Eighth Amendment.  Burton v. Downey, 805 F.3d 776, 784 (7th Cir. 2015) (citing Pittman v. Cnty. of Madison, 746 F.3d 766, 775 (7th Cir. 2014)).  Despite this distinction, the protection afforded Plaintiff is "functionally indistinguishable from the Eighth Amendment's protection for convicted prisoners." Smego v. Mitchell, 723 F.3d 752, 756 (7th Cir. 2013).

To succeed on a claim of inhumane conditions of confinement, Plaintiff must show that he suffered a sufficiently serious deprivation and that TDF officials were deliberately indifferent to a serious risk of harm.  Sain v. Wood, 512 F.3d 886, 893-94 (7th Cir. 2008).  An official acts with deliberate indifference when "the official knows of and disregards an excessive risk to [detainee] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff alleged in his complaint that he was denied food and subjected to cold temperatures over a period of six (6) hours while housed in the Special Management unit.  In determining whether these conditions were sufficiently serious, the Court must examine the severity and duration of the alleged deprivations.  See Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999) (a court "must assess the amount and duration of the deprivation" in order to determine whether the denial of food implicates constitutional concerns); Dixon v. Godinez, 114 F.3d 640, 644 (7th Cir. 1997) (courts should

examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; the availability and adequacy of alternatives to protect from cold, and other uncomfortable conditions).

Plaintiff does not dispute that the temperature in the room was 72 degrees during his initial confinement. Plaintiff testified that he had eaten breakfast on February 3, 2014, Pl.'s Dep. 12:10-11, but, given the timing of his incident with Defendant Orrill, he missed regular lunch service in his housing pod. Viewed in the light most favorable to Plaintiff, the record supports an inference that Plaintiff missed two consecutive meals on February 3, 2014. Plaintiff did not allege that he was denied food upon his return from the hospital.

At worst, Plaintiff was forced to endure a 72-degree room without food for approximately six (6) hours. Neither Plaintiff's general discomfort, nor the short-term deprivation of food permits an inference that Plaintiff suffered the type of extreme deprivation necessary to implicate constitutional concerns. See Bell v. Wolfish, 441 U.S. 520, 535 (1979) (pretrial detainees do not have a fundamental liberty interest to be "free from discomfort."); *Dixon,*

114 F.3d at 644 (prisoner subjected to temperatures so cold that ice formed on the walls for several winters); Del Raine v. Williford, 32 F.3d 1024, 1035 (7th Cir. 1994) (inmate's cell temperature was 40-to-50 degrees); Wade v. Haida, 2013 WL 4505990, at *9 (S.D. Ill, filed Aug. 23, 2013) (deprivation of food for one day, on its own, did not raise constitutional concerns).

Furthermore, the record does not suggest that Plaintiff suffered adverse health consequences as a result of these conditions. The hospital records disclose that Plaintiff was not experiencing chills when he arrived at the hospital and his body temperature was 98.7 degrees. (Doc. 55-2 at 11). Plaintiff testified that the emergency room doctors opined that the cause of his symptoms was overmedication for his thyroid condition. Pl.'s Dep. 33:10-13. Plaintiff had been prescribed levothyroxine, and the symptoms of an overdose for this particular drug are consistent with the symptoms Plaintiff experienced: cold, clammy skin; lightheadedness; sudden loss of coordination; disorientation; and, a change or loss in consciousness. Levothyroxine, Side Effects, http://www.mayoclinic.org/drugs-supplements/levothyroxine-oral-route/side-effects/drg-20072133 (last accessed Sept. 14, 2017).

Even if Plaintiff could show the requisite deprivation, he cannot show that the Defendants were personally responsible for the actions he alleges or that they acted with deliberate indifference. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (citations omitted).

Plaintiff testified that Defendants Orrill and Heller had no involvement past the initial altercation while any involvement on the parts of Defendants Pennock and Lay ceased after Plaintiff was escorted to the Special Management unit. Pl.'s Dep. 61:17-18; 91:8-23. These Defendants could not have known that Plaintiff would later feel cold or that he would be denied food at the time their respective involvements ended. Plaintiff testified that he did not ask for additional clothing while in the room, nor did he request a blanket, or a temperature adjustment. Therefore, any Defendant who had contact with Plaintiff during the six-hour period in question could not have appreciated any discomfort Plaintiff felt.

As to Defendants Scott, Hankins, and Biermann, Plaintiff testified that he sued these individuals solely by reason of their supervisory positions at the TDF. Pl's Dep. 90:14-17 ("Q. So you're suing [Defendants Scott, Hankins, and Biermann] because they are in charge, they have higher roles? A. Yes."). A government official may not be held liable under § 1983 on a theory of *respondeat superior*, that is, for the unconstitutional acts of his or her subordinates. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). Plaintiff does not assert that these Defendants personally participated in any of the alleged events. Pl.'s Dep. 90:24-91:7 (Defendants Scott, Hankins, and Biermann were not present during the events in question).

Accordingly, the Court finds that no reasonable juror could conclude that the Defendants violated Plaintiff's constitutional rights.

**IT IS THEREFORE ORDERED:**

**1) Plaintiff's Motion to Compel [58] is DENIED.**

**2) Defendants' Motion for Sanctions [59] is GRANTED. Defendants Caraway, Reid, and Simpson are dismissed with prejudice.**

3) Defendants' Motion for Summary Judgment [54] is GRANTED.

4) The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs.

5) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See FED. R. APP. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED:   September 18, 2017.

FOR THE COURT:

　　　　　　　*s/Sue E. Myerscough*　　　　　　　
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE